The UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

FLOYD CHAVIS

        Plaintiff,

    v.                       **REPORT AND RECOMMENDATION**
                                    **07-CV-0018 (LEK)**

MICHAEL J. ASTRUE[1]
COMMISSIONER OF SOCIAL SECURITY,

        Defendant,

## I.    Introduction

Plaintiff Floyd Chavis brings this action pursuant to the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g), 1383(c)(3), seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his application for Disability Insurance Benefits ("DIB").[2] Specifically, Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") was not supported by substantial evidence and contrary to the applicable legal standards. The Commissioner argues that the decision was supported by substantial evidence and made in accordance with the correct legal standards.

For the reasons set forth below, the Court finds that the Commissioner's decision contains legal error and is not supported by substantial evidence. Therefore, the Court recommends that Plaintiff's Motion for Judgment on the Pleadings be granted in part

---

[1] On February 12, 2007, Michael J. Astrue was sworn in as the Commissioner of the Social Security Administration.  Pursuant to Federal Rules of Civil Procedure 25(d)(1), he is automatically substituted for former Commissioner Jo Anne B. Barnhart as the defendant in this action.

[2] This case was referred to the undersigned for Report and Recommendation, by the Honorable Norman A. Mordue, pursuant 28 U.S.C. § 636(b)(1)(B), by an Order dated May 7, 2009.

and Defendant's Cross-Motion for Judgment on the Pleadings be denied.[3]

## II.   Background

On January 6, 1997, Plaintiff filed applications for DIB and SSI, claiming an onset date of February 2, 1996 (R. at 28, 58, 251).[4] Plaintiff alleges disability due to a back impairment, obesity, and learning disorders. His applications were denied initially on March 14, 1997 (R. at 28, 255).

On June 25, 1998, ALJ Zolezi issued a decision finding Plaintiff not disabled (R. at 33-38). The Appeals Council remanded the case on April 20, 2001, for various errors (R. at 287-289). On June 25, 2002, ALJ Volhard issued a decision finding Plaintiff disabled from February 2, 1996, Plaintiff's alleged onset date, through October 8, 1998 (R. at 268-71). On June 29, 2004, the Appeals Council remanded the case for a second time (R. at 280-81). The Appeals Council affirmed ALJ Volhard's finding of a closed period of disability, but remanded the case to determine whether Plaintiff was no longer disabled after October 8, 1998, due to a medical improvement or engaging in substantial gainful activity.[5] Id. A hearing was held on December 16, 2004, and a subsequent hearing occurred on January 10, 2006 (R. at 549. 530). On April 4, 2006, ALJ Ryan issued a decision finding Plaintiff was no longer disabled as of October 8, 1998, because his condition had medically improved (R. at 21-27). The ALJ's decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review (R. at 13-15). On January 5, 2007, Plaintiff filed this

---

[3] Although no motion for judgment on the pleadings was filed, the moving party was excused from such filing under General Order No. 18, which states in part: "The Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings . . . ." General Order No. 18. (N.D.N.Y. Sept. 12, 2003).
[4] Citations to the underlying administrative record are designated as "R."
[5] Plaintiff returned to work on a part-time basis in July 1997 (R. at 329).

action.

Based on the entire record, the Court recommends remand because the ALJ erred in evaluating the opinion of Plaintiff's treating physician and erred in evaluating Plaintiff's mental impairments. On remand, it is recommended that the ALJ reevaluate the effect of Plaintiff's obesity on his functional limitations.

### III.    Discussion

### A.    Legal Standard and Scope of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383 (c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

The Commissioner has established the following five-step sequential evaluation process[6] to determine whether an individual is disabled as defined under the Social

---

[6] This five-step analysis is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Security Act. See 20 C.F.R. §§ 416.920, 404.1520.  The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step.  See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir. 1984).  The final step of this inquiry is, in turn, divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

## B.    Analysis

### 1.  The Commissioner's Decision

As instructed by the Appeals Council, the ALJ solely addressed Plaintiff's disability subsequent to October 8, 1998 (R. at 22, 280-81). The Appeals Council ordered the ALJ to "[e]valuate the issue of disability cessation in accordance with the requirements of 20 CFR 404.1594 and 416.994" (R. at 280-81). As discussed more fully below, 20 C.F.R. § 404.1594(f) and § 416.994(b)(5) set forth a sequential evaluation to determine whether an individual's disability continued. The ALJ therefore employed that sequential evaluation and found the following: (1) Plaintiff engaged in work activity both

---

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. §§ 416.920, 404.1520.

before and after the end of his closed period of disability, October 8, 1998;[7] (2) Plaintiff's impairments do not meet or medically equal a listing in Appendix 1 to Subpart P of Part 404 of the regulations; (3) Plaintiff had medically improved by October 8, 1998; (4) that medical improvement was related to his ability to work; (5) Plaintiff's lower back impairment was a severe impairment on October 8, 1998; (6) Plaintiff's subjective complaints were not fully credible; (7) As of October 8, 1998, Plaintiff regained the residual functional capacity ("RFC") to perform "light" work; (8) Plaintiff's past work included asbestos remover and roofer; (9) Plaintiff was unable to perform his past work; (10) Plaintiff was born on March 16, 1958; (11) Plaintiff completed the eleventh grade; (12) based on Medical-Vocational Rule 202.18,[8] Plaintiff was no longer disabled as of October 8, 1998 (R. at 26). Ultimately, the ALJ found that as of October 8, 1998, Plaintiff was not disabled due to medical improvement. Id.

       **2.  Plaintiff's Claims:**

Plaintiff argues that the Commissioner's decision is contrary to the applicable legal standards and not supported by substantial evidence. Specifically, Plaintiff argues that the ALJ erred in a) applying the eight-step process; b) applying the treating physician rule; c) failing to find Plaintiff's obesity and learning disorders constituted severe impairments; d) failing to complete a function-by-function analysis; and e) relying upon Medical-Vocational Rule 202.18 to find Plaintiff not disabled because there were non-exertional limitations.

---

[7] Although the ALJ acknowledged that Plaintiff had engaged in substantial gainful activity, he continued on with the sequential evaluation noting that "[t]his work activity may trigger the trial work period and extended period of eligibility" (R. at 22-23).

[8] Medical-Vocational Guideline Rule 202.18 requires a finding of not disabled when a claimant is a younger individual, has limited or less education, and has skilled or semi-skilled past work with non transferable skills. 20 C.F.R. Pt. 404, Subpt. P, App 2, Rule 202.18.

### a) The ALJ Did Not Err in Applying the Eight-Step Sequential Evaluation Analysis

Plaintiff argues that the ALJ erred in i) failing to apply the five-step analysis; and ii) failing to identify a "comparison point" as required. Plaintiff's Brief, pp. 17-18.

### i) The Continuing or Ceasing Disability Analysis Was Appropriate

Plaintiff argues that the ALJ erred in applying the continuing or ceasing disability analysis. Plaintiff's Brief, pp. 17-18. To evaluate Plaintiff's argument, the Court must first determine (1) whether the 'medical improvement' standard applies to cases involving a closed period of disability. The Court will then determine whether (2) the ALJ's application of the continuing disability analysis was proper. Finally, the Court will evaluate (3) whether the ALJ erred in failing to also employ the five-step sequential analysis.

### (1) Medical Improvement Standard Applies to Closed Period of Disability Cases

On June 29, 2004, the Appeals Council affirmed ALJ Volhard's finding of a closed period of disability from February 2, 1996, through October 8, 1998 (R. at 280). However, the Appeals Council remanded the case to the ALJ to determine whether Plaintiff's disability had ceased due to a medical improvement, or because Plaintiff had engaged in substantial gainful activity (R. at 280-81). In the remand order, the Appeals Council noted that "[i]f cessation is based on work activity, a claimant may be entitled to a trial work period and extended period of eligibility; however, cessation based on medical improvement does not result in such an additional period of benefits." Id. The

7

Appeals Council then instructed the ALJ to "[e]valuate the issue of disability cessation in accordance with the requirements of 20 CFR 404.1594 and 416.994." Id.

According to the Act:

"A recipient of benefits . . . may be determined not to be entitled to such benefits on the basis of a finding that the physical or mental impairment on the basis of which such benefits are provided has ceased, does not exist, or is not disabling only if such finding is supported by--

(1) substantial evidence which demonstrates that—

(A) there has been any medical improvement[9] in the individual's impairment or combination of impairments (other than medical improvement which is not related to the individual's ability to work), and

(B) the individual is now able to engage in substantial gainful activity . . . .

42 U.S.C. § 423(f).

This medical improvement standard requires "the Commissioner [to] meet a burden of showing, by substantial evidence, that a medical improvement has taken place in a claimant's ability to perform work activity." Mumm v. Comm'r of Soc. Sec., 2008 WL 686787, at *9 (N.D.N.Y. Mar. 10, 2008) (citing 42 U.S.C. § 423(f)(1)(A); 20 C.F.R. § 404.1594). The applicable eight-step sequential evaluation[10] in which the standard is included is typically completed when an individual has been granted disability but, upon a later review by the Commissioner, benefits have been terminated. See eg. Batista v. Barnhart, 326 F.Supp.2d 345, 348-49, 352-54 (E.D.N.Y. 2004). The

---

[9] Medical improvement is defined as "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled." 20 C.F.R. §§ 404.1594(b)(1), 416.994(b)(1)(i).
[10] The process is analyzed separately below.

issue here, however, is whether the medical improvement standard is appropriate for an individual with a closed period of disability.

While the Second Circuit has not directly ruled on this issue, several other Circuits have found that indeed the medical improvement standard is appropriate for closed period disability cases. See Waters v. Barnhart, 276 F.3d 716, 719 (5th Cir. 2002) ("[H]olding that the medical improvement standing applies to the cessation date in closed period cases."); Shepherd v. Apfel, 184 F.3d 1196, 122 (10th Cir. 1999) (finding that the medical improvement standard applies to closed period of disability cases because it "is consistent with the language and legislative purpose in the Reform Act"); Chrupcala v. Heckler, 829 F.2d 1269, 1274 (3rd Cir. 1987) ("Fairness would certainly seem to require an adequate showing of medical improvement whenever an ALJ determines that disability should be limited to a specified period."); Pickett v. Bowen, 833 F.2d 288, 292 (11th Cir. 1987) ("[W]e discern from the broad remedial policies underlying the Disability Amendments that Congress intended to reach 'closed period' claimants."). Although the Seventh Circuit has not directly ruled on this issue, the Court has applied the medical improvement standard in determining whether the ALJ's decision was supported by substantial evidence. Jones v. Shalala, 10 F.3d 522 (7th Cir. 1993).

The Eighth Circuit has also addressed the issue, but the current holding of the Circuit is unclear. Originally the Court in *Camp* found that a closed period of disability did not constitute a "'termination' or 'cessation' case" as required, and therefore the medical improvement standard did not apply. Camp v. Heckler, 780 F.2d 721, 721-22 (8th Cir. 1986) (8th Cir. 1986). Four years later, the Eighth Circuit again rejected the

medical improvement standard for closed period cases noting that *Camp* was the current law of the circuit. Ness v. Sullivan, 904 F.2d 432, 435 n. 4 (8th Cir. 1990). However, in a later case, the Court applied the medical improvement standard to an individual with a closed period of disability without reference to either *Camp* or *Ness*. Burress v. Apfel, 141 F.3d 875 (8th Cir. 1998).

This Court will follow the overwhelming majoring of courts finding that the medical improvement standard applies to closed period disability cases. The Court will therefore proceed to discuss whether the ALJ was correct in apply the eight-step sequential evaluation in which the medical improvement standard is included.

### (2)    The Eight-Step Sequential Evaluation is the Appropriate Analysis

The medical improvement standard is encompassed in specific steps set forth in 20 C.F.R. § 404.1594 and § 416.994. These steps are completed "[t]o assure that disability reviews are carried out in a uniform manner . . . and that any decisions to stop disability benefits are made objectively, neutrally and are fully documented." 20 C.F.R. §§ 404.1594(f), 416.994(b)(5). This analysis asks:

(1) Are you engaging in substantial gainful activity? If you are . . . we will find disability to have ended . . . .
(2) If you are not, do you have an impairment or combination of impairments which meets or equals the severity of an impairment listed in appendix 1 of this subpart? If you do, your disability will be found to continue.
(3) If you do not, has there been medical improvement as defined in paragraph (b)(1) of this section? . . . .
(4) If there has been medical improvement, we must determine whether it is related to your ability to do work in accordance with paragraphs (b)(1) through (4) of this section . . . .
(5) If we found at step (3) that there has been no medical improvement or if we found at step (4) that the medical improvement is not related to your

> ability to work, we consider whether any of the exceptions in paragraphs
> (d) and (e) of this section apply. . . .
> (6) If medical improvement is shown to be related to your ability to do work
> or if one of the first group of exceptions to medical improvement applies,
> we will determine whether all your current impairments in combination are
> severe . . . .
> (7) If your impairment(s) is severe, . . . we will assess your residual
> functional capacity based on all your current impairments and consider
> whether you can still do work you have done in the past. If you can do
> such work, disability will be found to have ended.
> (8) If you are not able to do work you have done in the past, we will
> consider one final step. Given the residual functional capacity assessment
> and considering your age, education and past work experience, can you
> do other work? If you can, disability will be found to have ended. If you
> cannot, disability will be found to continue.

20 C.F.R. § 404.1594(f)(1)-(8).[11] The Appeals Council ordered the ALJ to "[e]valuate the

issue of disability cessation in accordance with the requirements of 20 CFR 404.1594

and 416.994" (R. at 280-81). Although the Appeals Council did not specifically refer to

the eight-step sequential evaluation set forth in those regulations, the Court assumes

the Appeals Council was ordering the ALJ to complete that analysis. 20 C.F.R. §§

404.1594(f)(1)-(8), 416.994(b)(5)(i)-(vii).

 The Second Circuit has also not yet ruled on whether the eight-step process is

the appropriate procedure for completing the medical improvement standard in closed

period disability cases. However, at least one district court in the Second Circuit, while

discussing a closed period disability case, noted the process was the appropriate

standard to apply. Abrams v. Astrue, 2008 WL 4239996, at *2 (W.D.N.Y. Sept. 12,

2008) ("The Commissioner has the burden of persuasion to demonstrate medical

improvement, in accordance with the eight-step sequential evaluation process set forth

---

[11] 20 C.F.R. § 416.994(b)(5)(i)-(vii) outlines an identical process with the exception that step one is eliminated. The Court will refer to the process as the "eight-step process" because the ALJ employed the eight-step process, not the seven, and Plaintiff's engagement in substantial gainful activity is relevant to this case (R. at 21-27).

in the Regulations at 20 C.F.R. § 404.1594(f).”). Courts outside the circuit have also

applied the eight-step process in closed period disability cases. See McDaniel v. Astrue,

2009 WL 929555, at *3 (M.D.N.C. Apr. 3, 2009) (citing 20 C.F.R. § 404.1594(f)(1)-(8)

(“the Commissioner employs an eight-step sequential analysis” to determine whether

there has been medical improvement in a closed period of disability case); Keen v.

Astrue, 2009 WL 648660, at *3,4 (W.D.Va. Mar. 12, 2009) (noting that in a closed

period of disability case, “[t]he Commissioner uses an eight-step process [to] evaluat[e]

whether a claimant's DIB benefits should be terminated”); Critchfield v. Astrue, 2009 WL

635698, at *2-3 (N.D.Fla. Mar. 10, 2009) (noting that in closed period disability cases,

the “regulations provide an eight-step sequential evaluation process to be followed in

cessation cases to determine if a claimant's disability continues”). This Court therefore

finds that the eight-step process is the appropriate sequential evaluation to complete in

applying the medical improvement standard.

> **(3)    The ALJ Did Not Err in Failing to Apply the Five-Step Sequential Evaluation**

As previously stated, the Commissioner established the five-step sequential

evaluation process to determine whether an individual is disabled as defined under the

Social Security Act. See 20 C.F.R. §§ 416.920(a)(1), 404.1520(a)(1) (“This section

explains the five-step sequential evaluation process we use to decide whether you are

disabled . . . .”). Once an individual has been found disabled, the eight-step sequential

evaluation is completed to determine whether that disability continued. See 20 C.F.R.

§§ 404.1594(a), 416.9949(a) (“If you are entitled to disability benefits . . .  there are a

number of factors we consider in deciding whether your disability continues.”). Thus, the

eight-step process would not be completed unless the ALJ had found a claimant disabled at some point during the five-step sequential evaluation. Here, ALJ Ryan completed the eight-step evaluation without analyzing Plaintiff's disability under the five-step process.

Plaintiff's argument can be read to argue that ALJ Ryan erred in failing to repeat the five-step sequential evaluation. Plaintiff's Brief, pp. 17-18. However, the Court cannot find error in the ALJ's failure. ALJ Vohard, after completing the five-step sequential evaluation, found Plaintiff disabled from February 2, 1996, through October 8, 1998 (R. at 268-71). The Appeals Council affirmed this finding[12] (R. at 280-81). This action was in compliance with the regulations. 20 C.F.R. §§ 404.979, 416.1479 ("The Appeals Council may affirm, modify or reverse the administrative law judge hearing decision . . ."). Plaintiff does not argue that ALJ Volhard's finding of disability through October 8, 1998 was incorrect. Plaintiff's Brief, p. 2. (Plaintiff acknowledged that "the issue is whether [Plaintiff's] disability ceased on October 8, 1998"). As Plaintiff had previously been found disabled, the purpose of the five-step sequential evaluation no longer existed. See 20 C.F.R. §§ 416.920(a)(1), 404.1520(a)(1) ("This section explains the five-step sequential evaluation process we use to decide whether you are disabled . . .").

Moreover, the Appeals Council instructed the ALJ to only consider Plaintiff's disability after October 8, 1998, "in accordance with the requirements of 20 CFR

---

[12] The Appeals Council specifically affirmed that portion of ALJ Volhard's decision "finding that the claimant was disabled from February 2, 1996 to October 8, 1998" (R. at 280). The Appeals Council then "vacate[d] the hearing decision only with respect to the issue of disability subsequent to October 8, 1998" and remanded to a third ALJ to make further findings as to why Plaintiff was no longer entitled to disability benefits after October 8, 1998 (R. at 280-81). ALJ Ryan acknowledged these events in his decision and noted that "[t]he issue is whether the claimant's disability ceased on October 8, 1998" (R. at 21-22).

404.1594 and 416.994" (R. at 280-81). The ALJ is obligated to follow the Appeals

Council's instructions. 20 C.F.R. §§ 404.977, 416.1477 ("The administrative law judge

shall take any action that is ordered by the Appeals Council and may take any additional

action that is not inconsistent with the Appeals Council's remand order."). It would have

been error for the ALJ to not comply with the Appeals Council's order. See Scott v.

Barnhart, 592 F.Supp.2d 360, 371-72 (W.D.N.Y. 2009) (internal citations removed)

("The ALJ's failure to comply with the Appeals Council's order constitutes legal error,

and necessitates a remand.").

Based on the foregoing, the Court cannot find error in the ALJ's failure to repeat

the five-step process.

### ii)  The Comparison Point was Plaintiff's Disability Onset Date

Plaintiff argues that the ALJ failed to identify a 'comparison point' as required by

20 C.F.R. § 404.1594(b)(7), because this was a closed period of disability case.

Plaintiff's Brief, pp. 17-18. However, Plaintiff's argument is unavailing.

20 C.F.R. § 404.1594(b)(7) states:

Point of comparison. For purposes of determining whether medical
improvement has occurred, we will compare the current medical severity
of that impairment(s) which was present at the time of the most recent
favorable medical decision that you were disabled or continued to be
disabled to the medical severity of that impairment(s) at that time. If
medical improvement has occurred, we will compare your current
functional capacity to do basic work activities (i.e., your residual functional
capacity) based on this previously existing impairment(s) with your prior
residual functional capacity in order to determine whether the medical
improvement is related to your ability to do work. The most recent
favorable medical decision is the latest decision involving a consideration
of the medical evidence and the issue of whether you were disabled or
continued to be disabled which became final.

20 C.F.R. § 404.1594(b)(7). In cases where Plaintiff has been granted a closed period

of disability, the disability onset date is the point of comparison. See Harrison v. Astrue,

2009 WL 1085956, at *6 (N.D.Ind. Apr. 22, 2009) ("[W]hen, as here, the ALJ finds that

Plaintiff is disabled for a closed period in the same decision in which he found that a

medical improvement occurred, the disability onset date is the 'comparison point

date.'"); Booms v. Comm'r of Soc. Sec., 277 F.Supp.2d 739, 745 (E.D.Mich. 2003)

(finding that Plaintiff's disability onset date was the comparison point date). Here, the

point of comparison was February 2, 1996. The ALJ acknowledged this date in his

decision (R. at 22).

### b)  The ALJ's Treating Physician Analysis is Flawed

Plaintiff argues that the ALJ erred in evaluating the opinions of Plaintiff's treating

physician, Dr. Patrick Connolly. Plaintiff's Brief, pp. 20-22.

According to the "treating physician's rule,"[13] the ALJ must give controlling weight

to the treating physician's opinion when that opinion is "well-supported by medically

acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the

other substantial evidence in [the] record."  20 C.F.R. § 404.1527(d)(2); see also Green-

Younger v. Barnhart, 335 F.3d 99, 105 (2d Cir. 2003); Shaw v. Chater, 221 F.3d 126,

134 (2d Cir. 2000).  "Failure to provide 'good reasons' for not crediting the opinion of a

claimant's treating physician is ground for remand."  Snell v. Apfel, 177 F.3d 128, 133

(2d Cir. 1999) (citing Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998)).

---

[13] "The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances. Under 20 C.F.R. § 404.1527(d)(1)-(6), the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court.  See de Roman, 2003 WL 21511160, at *9 (citing C.F.R. § 404.1527(d)(2)); see also Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998).

Here, the ALJ granted "substantial weight, if not controlling weight," to Dr. Connolly's opinions that Plaintiff "could re-enter the work force with restrictions of no repetitive bending or twisting, and no lifting greater than 20 pounds" (R. at 24). These opinions are found in Dr. Connolly's treatment notes from May 21, 1998, and June 9, 1998 (R. at 24, 452, 453). However, the ALJ failed to analyze, or even mention, the MSS Dr. Connolly completed on September 18, 2001 (R. at 459-53). This MSS was more extensive and far more restrictive than the few limitations he mentioned in his treatment notes.

In the ALJ's credibility analysis he noted that "[t]he question in this decision is whether the claimant experienced medical improvement as of October 8, 1998. If he did, his current symptoms and limitations are not relevant" (R. at 24). Based on this statement, it seems likely that the ALJ failed to consider Dr. Connolly's 2001 MSS because he did not find it relevant to October 8, 1998. However, the Second Circuit has

16

held that a treating physician's retrospective "opinion is still entitled to significant

weight." <u>Dousewicz v. Harris</u>, 646 F.2d 771, 774 (2d Cir. 1981). Moreover, Plaintiff's

situation can be likened to a case in which an individual must be found disabled before

his insured status has ended, to receive benefits. In that case, the Second Circuit has

> "observed, repeatedly, that '[E]vidence bearing upon an applicant's
> condition subsequent to the date upon which the earning requirement [
> *i.e.,* insured status] was last met is pertinent evidence in that it may
> disclose the severity and continuity of impairments existing before the
> earning requirement date or may identify additional impairments which
> could reasonably be presumed to have been present and to have imposed
> limitations as of the earning requirement date.'"

<u>Lisa v. Sec'y of Dep't of Health & Human Servs.</u>, 940 F.2d 40, 44 (2d Cir. 1991)

(<u>quoting</u> <u>Gold v. Sec'y of Health, Educ. & Welfare</u>, 463 F.2d 38, 41-42 (2d Cir. 1972))

(<u>citing</u> <u>Eiden v. Sec'y of Health, Educ. & Welfare</u>, 616 F.2d 63, 65 (2d Cir. 1980)). It

was, therefore, error for the ALJ not to consider the opinions in Dr. Connolly's MSS and

this error necessitates remand. <u>See</u>  <u>Longbardi v. Astrue</u>, 2009 WL 50140, at *30

(S.D.N.Y. Jan. 1, 2009) (remanding, in part, because "the ALJ failed to 'give good

reasons' for deciding not to give 'controlling weight'-or any weight-to [the treating

physician's] opinion, as required by the regulations").

Plaintiff also argues that the ALJ erred in failing to re-contact Dr. Connolly to

address the conflicts between the limitations found in Dr. Connolly's treatment notes

and the restrictions located in his MSS. Plaintiff's Brief, p. 22. However, because the

ALJ failed to acknowledge Dr. Connolly's MSS, there is no indication that the ALJ found

a conflict. But, on remand, if the ALJ finds a conflict he has an obligation to re-contact

Dr. Connolly for an explanation of that conflict. 20 C.F.R. §§ 404.1512(e)(1),

416.912(e)(1) ("We will seek additional evidence or clarification from your medical

source when the report from your medical source contains a conflict or ambiguity that must be resolved . . . .").

Therefore, the Court recommends remand to allow the ALJ an opportunity to consider and appropriately weigh Dr. Connolly's MSS, and to re-contact Dr. Connolly for clarification, if necessary.

### c) The ALJ Must Reevaluate Plaintiff's i) Obesity Claim, and ii) His Learning Disorders

#### i) Obesity

Plaintiff argues that the ALJ erred in finding his obesity not severe. Plaintiff's Brief, pp. 18-19.

An ALJ is instructed to consider impairments of which a claimant has complained or about which the ALJ has received evidence. See 20 C.F.R. § 404.1512(a) ("We will consider only impairment(s) you say you have or about which we receive evidence."). At the severity step, only de minimis claims may be properly screened out.  Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995).  A finding of not severe is appropriate when an impairment, or combination of those impairments "does not significantly limit your physical or mental ability to do basic work activities."  20 C.F.R. § 404.1521(a). In this case, the ALJ found Plaintiff's lower back impairment severe, but failed to consider, or even acknowledge, any other impairments (R. at 24).

Although the Plaintiff did not claim obesity as an impairment in his application for benefits, the record indicates that Plaintiff is obese. An individual with a BMI[14] over 30 is considered obese. SSR 02-1P, 2000 WL 628049, at *2. Plaintiff weighed 329 pounds on

---

[14] An individual's Body Mass Index "is the ratio of an individual's weight in kilograms to the square of his or her height in meters ($kg/m^2$)."  SSR 02-1P, 2000 WL 628049, at *2.

June 12, 1997 (R. at 168), 309.8 pounds on September 4, 1997 (R. at 245), and 291 pounds on March 1, 1999 (R. at 454). Plaintiff's height was six feet one inch (R. at 466). Thus, Plaintiff's BMI ranged from roughly 38 to 43.

However, Plaintiff's BMI may or may not be enough to establish a severe impairment. SSR 02-1P, 2000 WL 628049, at *4 ("There is no specific level of weight or BMI that equates with a 'severe' or a 'not severe' impairment."). "As with any other medical condition, we will find that obesity is a 'severe' impairment when, alone or in combination with another medically determinable physical or mental impairment(s), if it significantly limits an individual's physical or mental ability to do basic work activities." Id.

Here, it is unclear whether Plaintiff experienced additional limitations due to his obesity. In support of his argument set forth in his filings, Plaintiff cites to Dr. Connolly's treatment notes in which he suggests Plaintiff consider gastric bypass surgery and notes that "*weight reduction . . . has helped his back pain*" (R. at 452, 456)(emphasis supplied).   Although Dr. Connolly's opinions are not strictly functional limitations, his comments support a diagnosis of obesity, and impliedly establish that obesity is a limitation because weight reduction helped Plaintiff functionally by reducing his back pain. The ALJ also failed to mention Plaintiff's obesity at any point in his decision and there is no indication whatsoever that he factored in Plaintiff's obesity in arriving at his conclusions concerning Plaintiff's impairments.

The SSA has promised with respect to assessing a claimant's RFC: "As with any other impairment, [the ALJ] will explain how [he] reached [his] conclusions on whether obesity caused any physical or mental limitations." S.S.R. 02-1p, 2000 WL 628049, at

*7. Despite this language, some district courts, following the Seventh Circuit, have declined to remand when an ALJ fails to explicitly address obesity, reasoning that obesity is indirectly considered if the ALJ adopts limitations suggested by examining doctors. Guadalupe v. Barnhart, No. 04-CV-7644, 2005 WL 2033380, at *6 (S.D.N.Y. Aug. 24, 2005) (citing Skarbek v. Barnhart, 390 F.3d 500, 504 (7th Cir. 2004)) (reasoning that the ALJ "relied on" medical evidence that made no mention that Plaintiff was obese even though it must have been apparent at the time of the assessment and thus the ALJ "sufficiently, if somewhat indirectly, accounted for Plaintiff's obesity"); see, e.g., Martin v. Astrue, No. 5:05-CV-72, 2008 WL 4186339, *3-4, 11-12 (N.D.N.Y. Sept. 9, 2008) (finding ALJ's failure to explicitly address Plaintiff's obesity harmless error, because the ALJ "utilized" the physical limitations from various doctors who considered Plaintiff's obesity).  Second Circuit district courts have demanded that an ALJ clearly indicate he considered obesity when assessing a Plaintiff's limitations. See, e.g., Hogan v. Astrue, 491 F.Supp.2d 347, 355 (W.D.N.Y. 2007) (finding error even though the ALJ found Plaintiff's obesity a severe impairment, because it was "unclear whether he considered plaintiff's obesity at steps four and five of the disability evaluation"); cf. Fox v. Astrue, No. 6:05-CV-1599, 2008 WL 828078, at *11 (N.D.N.Y. Mar. 26, 2008) (finding that the ALJ sufficiently considered obesity where he discussed it in an "entire paragraph"); Cruz v. Barnhart, No. 04-CV-9011, 2006 WL 1228581, at *9-10 (S.D.N.Y. May 8, 2006) (reasoning that the ALJ sufficiently considered the Plaintiff's obesity when he mentioned obesity in his factual findings).

The ALJ failed to mention Plaintiff's obesity in his decision. Throughout his decision, the ALJ considered various treatment notes from Dr. Connolly from 1997

20

through 1999 (R. at 22-26). Treatment notes from Dr. Connolly during this time period reference his opinion that Plaintiff's weight reduction decreased his back pain (R. at 247). The ALJ then went on to adopt Dr. Connolly's opinion that Plaintiff could not lift more than twenty pounds (R. at 24-25). It is therefore possible, under the Seventh Circuit's approach, that the ALJ indirectly considered Plaintiff's obesity in determining his functional limitations.

However, on remand, the Court suggests that the ALJ clearly articulate any findings that link his limitations, if any, to obesity.

### ii)     Mental Impairments

Plaintiff argues that the ALJ erred in finding his learning disorder not severe. Plaintiff's Brief, pp. 18-19.

There is little evidence in the record concerning Plaintiff's mental impairments. The record does not indicate that Plaintiff underwent a mental examination with a Social Security Administration consultative examiner. However, the evidence in the record, as little as there is, supports a finding of a severe mental impairment. Between May and August 2004, Plaintiff was seen several times by Thomas Griffiths, clinical psychologist, for various mental examinations and tests (R. at 504-09). It appears Plaintiff was referred to Dr. Griffiths at the request of VESID.[15] At that time, Plaintiff's full scale IQ was 82, "placing him within the *Low Average* range of intellectual functioning and above . . . approximately 12% of his peers" (R. at 504) (emphasis in original). Plaintiff's verbal

---

[15] Vocational and Educational Services for Individuals with Disabilities.

IQ score was 79 and placed him in the "*Borderline*" range[16] (R. at 507) (emphasis in

original). Finally, Plaintiff's performance IQ score of 89 placed him in the "*Low Average*

range and better than . . . approximately 23% of his peers" (R. at 505). Notably, Dr.

Griffiths found that, according to the Working Memory Index (WMI), Plaintiff "may

experience significant difficulty in holding information to perform a specific task" (R. at

505). Plaintiff "performed better than only 1% of his age-mates" on the WMI. Id. The

WMI test also indicated that Plaintiff "experiences a very rapid loss of relevant

information that adversely affects his ability to perform mental operation at the level of

his peers. [Plaintiff's] score, which is in the *Extremely Low* classification range, exceeds

that of only 2% of individuals in his age group." Id. (emphasis in original).

Plaintiff scored a 49 on the Reading subtest, placing him in the .06[th] percentile, or

a second grade equivalent (R. at 507). Plaintiff also scored a 74 on the Arithmetic

subtest, placing him in the 2nd percentile, or a fifth grade equivalent. Id. Dr. Griffiths

noted that Plaintiff "likely suffers from a learning disability." Id.

Ultimately Dr. Griffiths found that

there was clear evidence of significant attentional problems, and such
impairment can lead to apparent problems with memory even though
memory itself appears to be intact. Mr. Chavis' medications could be a
possible source of attention compromise. There was also evidence of a
Developmental Reading Disorder, which limits Mr. Chavis' ability to read.
These findings are consistent with his stated suspicions that he suffers
from 'dyslexia'

(R. at 507).

---

[16] Dr. Griffiths noted that Plaintiff's Verbal Comprehension Index score was a better indicator of Plaintiff's
abilities (R. at 504). That score, of 88, Placed Plaintiff "in the *Low Average* range and better than . . .
approximately 21% of his peers" (R. at 504) (emphasis in original).

Although Plaintiff's IQ tests were completed several years after October 8, 1998, without evidence otherwise, the ALJ should presume Plaintiff's IQ remained reasonably stable throughout his life. See Santiago v. Astrue, No. 07-CV-6239, 2008 WL 2405728, at *3-4 (W.D.N.Y. June 11, 2008) (quoting Hodges v. Barnhart, 276 F.3d 1265, 1268 (11th Cir. 2001) (endorsing the view that "absent evidence of sudden trauma that can cause retardation, the IQ tests create a rebuttable presumption of a fairly constant IQ throughout [the plaintiff's] life); citing Figueroa Rivera v. Apfel, No. 98-CV-619E, 2000 WL 1568596, [at *3 ] (W.D.N.Y. Sept. 29, 2000)). "[A]n ALJ is not required to accept a claimant's IQ scores when they are inconsistent with the record. . . . [but] [a]bsent any evidence of a change in the plaintiff's intellectual functioning, it is appropriate to assume that plaintiff's IQ has not changed . . . ." Vasquez-Ortiz v. Apfel, 48 F.Supp.2d 250, 257 (W.D.N.Y.1999).

Where an ALJ has omitted an impairment from step two of the sequential analysis, other courts have declined to remand if the ALJ clearly considered the effects of the impairment in the remainder of his analysis. See, e.g., McConnell v. Astrue, 2008 WL 833968, at *11-12 (N.D.N.Y. Mar. 27, 2008) (declining to remand where ALJ did not mention Plaintiff's carpel tunnel in the severity analysis but considered it at the RFC step and found no associated significant limitations in his functional assessment); Haskins v. Comm'r of Soc. Sec., 2008 WL 5113781, at *5 (N.D.N.Y. Nov. 25, 2008) (declining to remand where ALJ did not consider Plaintiff's right arm surgery in the severity analysis but nonetheless found related limitations in his RFC analysis). This approach is not appropriate here because the ALJ failed to discuss Plaintiff's mental impairments at any point in his decision. The ALJ's failure to address Plaintiff's mental

23

impairments is error worthy of remand. See Longbardi, 2009 WL 50140, at *30 (citing Diaz v. Shalala 59 F.3d 307, 315) (2d Cir. 1995); Ferraris v. Heckler, 728 F.2d 582, 586-87 (2d Cir. 1984); Kulesze v. Barnhart, 232 F.Supp.2d 44, 57 (W.D.N.Y. 2002)) ("[I]t is well-settled that an ALJ must address all pertinent evidence of record, and failure to do so is plain legal error.").

Therefore, the Court recommends remand to allow the ALJ to evaluate Plaintiff's mental impairments. Because of the lack of mental evidence, the ALJ may wish to send Plaintiff to a psychiatric consultative examiner to obtain additional evidence regarding Plaintiff's limitations. See 20 C.F.R. §§ 404.1512(f), 416.912(f) ("If the information we need is not readily available from the records of your medical treatment source, or we are unable to seek clarification from your medical source, we will ask you to attend one or more consultative examinations at our expense.").

### d)  The ALJ's RFC Finding is Necessarily Flawed

Plaintiff argues that the ALJ's RFC finding was flawed because he failed to complete a function-by-function analysis as required. Plaintiff's Brief, pp. 22-24.

Because the ALJ erred in applying the treating physician rule and failed to analyze Plaintiff's obesity and mental impairments, the ALJ's RFC is necessarily flawed.

### e)  The Court Cannot Determine whether the ALJ Appropriately Relied on the Medical-Vocational Grids

Plaintiff argues that the ALJ erred in applying the Medical-Vocational Grids because of Plaintiff's significant non-exertional limitations. Plaintiff's Brief, pp. 24-25.

Because the ALJ failed to analyze Plaintiff's mental impairments, the Court

cannot determine whether the ALJ appropriately relied on the Medical-Vocational Grids in finding Plaintiff not disabled as of October 8, 1998.

## IV.   Conclusion

Based on the foregoing, the Court recommends that the Commissioner's decision denying disability benefits be REMANDED for further proceedings in accordance with this recommendation and pursuant to sentence four of 42 U.S.C. Section 405(g).

Respectfully submitted,



Victor E. Bianchini
United States Magistrate Judge

          Syracuse, New York
DATED:    December 2, 2009

### ORDER

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an**

**extension of such time waives the right to appeal the District Court's Order.**

*Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985);   *Small v.*

*Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989);   *Wesolek v.*

*Canadair Limited,* 838 F.2d 55 (2d Cir.1988).

Let the Clerk send a copy of this Report and recommendation to the attorneys for

the Plaintiff and the Defendants.

SO ORDERED.

Victor E. Bianchini
United States Magistrate Judge


Syracuse, New York
DATED:        December 2, 2009